**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN  DIVISION

| | | |
|---|---|---|
| THE ARKANSAS SOCIETY OF FREETHINKERS | * * * | |
| VS. | * * | NO: 4:09CV00925   SWW |
| CHARLIE DANIELS, in his official capacity as ARKANSAS SECRETARY OF STATE | * * | |

**MEMORANDUM OPINION AND ORDER**

This is an action pursuant to 42 U.S.C. § 1983 by the Arkansas Society of Freethinkers ("ASFT") against Defendant Charlie Daniels in his official capacity as the Arkansas Secretary of State.  ASFT charges that Secretary Daniels violated the organization's First Amendment right to freedom of speech by denying its application to install a temporary Winter Solstice display on the grounds of the Arkansas State Capitol.  Along with the complaint, ASFT  filed a motion for a preliminary injunction requiring Daniels to allow installation of the display.  Following a hearing on ASFT's motion, held on December 14, 2009, the Court stated findings of fact and conclusions of law from the bench and granted ASFT's motion for a preliminary injunction.  This memorandum opinion reduces the Court's findings of fact and conclusions of law to writing.

**Findings of Fact**

Every year since sometime in the 1940's, a nativity scene has been displayed on the Capitol grounds during the Christmas holiday season.  Eventually, the original nativity figures deteriorated, and the Secretary of State received new figures, which were maintained by the Secretary and displayed on or near the steps of the Capitol building.

1

Sometime in the 1990's, Rita Sklar, the Executive Director of the ACLU of Arkansas, complained to former Secretary of State Bill McCuen that the State's nativity scene display amounted to a violation of the Establishment Cause.  Eventually, in response to Sklar's complaint and during the tenure of Secretary of State Sharon Priest, who was Secretary Daniels' predecessor, a nonprofit group took ownership of the nativity display and took charge of installing the nativity display each year at a location on the Capitol grounds but away from the steps of the building.  Additionally, Secretary Priest notified Sklar that a new written policy had been adopted that permitted private parties to maintain temporary displays on the Capitol grounds.  Priest indicated that the new policy was intended to address Sklar's concern that the nativity scene on the steps of the Capitol had violated the Establishment Clause.  The Secretary of State's written policy governing the installation of temporary displays by private parties reads as  follows:

**Temporary Displays on State Capitol Grounds**

In order to place any temporary display on the State Capitol Grounds it is necessary for a sponsor to do the following:

1. The sponsor shall send a written request.

2. If the display is movable, it is necessary to be attended by the sponsor or designee at all times.

3. The Secretary of State or designee shall determine the location and length of time for the display.

4. Sponsor shall hold harmless the Secretary of State or any other governmental agency for any and all damage, destruction, theft or vandalism of the display.

5. Sponsor is responsible for making, maintaining and removing the display.

6. The Sponsor my be responsible for any utilities or labor in making,

maintaining and removing display.

7. No display will be allowed to interfere with pedestrian or vehicle traffic flow.

8. Sponsor required to obtain written permission from the Building and Grounds Director to schedule a time to make, maintain and remove display.

9. If the sponsor fails to follow these requirements, the Secretary of State may remove the display and the owner's expense.

10. Sponsor is responsible to return the Capitol Grounds to substantially the same condition as before the display was placed on the Capitol Grounds. Sponsor is responsible for any and all damage caused by the display and is required to repair such damage. Damage includes personal injury due to display, resodding due to traffic to and from display, damage to the underground sprinkler system and any and all other conditions created by the display. Sponsor will be required to have insurance to cover damages caused by display.

11. If the Sponsor fails to adhere to any of these requirements, the Secretary of State reserves the right to deny access to the Capitol Grounds for future displays.

Plf.'s Hr'g Ex. #1.

ASFT is a nonprofit organization, incorporated in 1996. According to Mark Love, ASFT's registrar, the organization's members includes atheists, agnostics, deists, and rationalists who "get together to socialize and have a good time." Pursuant to the Secretary of State's written policy governing temporary displays on the Capitol grounds, ASFT made a written application to install a Winter Solstice display. A letter to Daniels dated October 16, 2009 from Love states as follows:

> The Arkansas Society of Freethinkers would like to reserve a spot on the state capitol grounds for a Winter Solstice Holiday Display, in the same area designated for such displays as the annual nativity scene. The themes of the display would consist of the following:
>
> •     Side 1 of 4: History of festivities that took place around the winter solstice.
> •     Side 2 of 4: A description of a Freethinker, with a list of famous Freethinkers.
> •     Side 3 of 4: A wall of knowledge, which would contain book covers from

> popular books.
> - Side 4 of 4: A "Did You Know?" wall with facts about our ancestry, timeline of life on earth, interesting facts about the universe, and information on the scientific method.
>
> Physical Description of the Winter Solstice Display
> A box approximately 4' (feet) wide by 4' deep by 8' high, with walls 5/8" (inch) thick, made by attaching four plywood 4' by 8' by 5/8" thick sheets together at right angles, using 2" by 4" by 8' pieces of lumber. The lumber would be attached to the plywood sheets using both epoxy and screws. The four walls of the display will be bonded to a 4' by' 4' frame made of 2" by 4" treated lumber that provides the ground interface. On the inside edge of this frame will sit a floor made of 2" by 4" lumber. A large ballast weight, probably consisting of concrete blocks, will be placed on floor of the display, to increase its stability during high winds, and make the display difficult for anyone to move.[1]  The display will also have a plywood top that is securely fastened to the sides using 2 by 4 lumber and wood screws. The display's content will be on the outside surface of each wall of the box. A spot light will be attached to the outside wall, near the top of each side, to illuminate that side's content at night.
>
> We'd like to illuminate the display at night, and have it available for viewing from November 25, 2009 until January 4, 2010 (41 days) on the capitol grounds. We need to be made aware of any issues you might have with this display, as soon as possible, as we'll be unable to make changes after Oct 26, 2009.
>
> We need information on the following:
> 1) Designated area for the display.
> 2) Electrical power options for illumination of the display.

Plf.'s Hr'g Ex. #2.

It is undisputed that ASFT followed all procedures required by the Secretary's written policy for installing a temporary display on the Capitol grounds. Nonetheless, Daniels denied ASFT's application. According to Daniels, he denied the application because he did not think that the appearance of the proposed structure would go along with a Christmas theme. Additionally, Daniels testified that he is opposed to the installation of any temporary displays on

---

[1] Love testified that after he submitted the letter to Daniels, improvements were made to the structure's anchoring system, which eliminated the need for concrete blocks.

the Capitol grounds, with the exception of the nativity scene because "it has been there for a number of years, and it fits in with the holiday scheme of things."

## Conclusions of Law

In determining whether to issue a preliminary injunction, a court must consider four factors: (1) the threat of immediate irreparable harm to the movant; (2) the balance between this harm and the injury that granting the injunction will inflict on other litigants; (3) the probability that movant will succeed on the merits; and (4) the public interest. *Dataphase Systems, Inc. v. C.L. Systems, Inc.,* 640 F.2d 109, 113 (8th Cir.1981).

When First Amendment rights are at issue, the likelihood of success on the merits is the pivotal factor. The loss of First Amendment freedoms, even for short periods of time, unquestionably constitutes irreparable injury. *See Phelps-Roper v. Nixon,* 545 F.3d 685, 690 (8th Cir. 2008)(quoting *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673(1976)). Accordingly, if a plaintiff can establish a sufficient likelihood of success on the merits on a First Amendment claim, he or she will also have established irreparable harm as the result of the deprivation. *Id.* (citing *Marcus v. Iowa Pub. Television*, 97 F.3d 1137, 1140-41 (8th Cir.1996)). The determination of the public interest is also dependent on the likelihood of success on the merits in a First Amendment case because it is always in the public interest to protect constitutional rights. *Id.* "The balance of equities, too, generally favors the constitutionally-protected freedom of expression." *Id.*

Because the First Amendment restricts government regulation of private speech, but does not restrict government speech, the Court must first inquire whether the State is making a statement of its own by allowing the display of a nativity scene on the Capitol grounds, while

denying ASFT's application to install a temporary Winter Solstice exhibit. *See Pleasant Grove City v. Summum*, 129 S. Ct. 1125, 1130-1132 (2005).

Permanent monuments displayed on public property typically represent government speech, even when they are privately funded or donated, *id*. at 1132, and in selecting monuments appropriate for the site in question, government decisionmakers may consider content-based factors such as esthetics, history, and local culture. *See id*. at 1134. But in this case, the nativity scene presently on exhibit at the Capitol is a temporary display that is owned, possessed, maintained, and installed by a private group, not the government.

The Court finds that in this case, the government is not speaking on its own behalf or through others. Instead, by transferring possession and care of the nativity scene to a private group and issuing a policy that permits private parties to install temporary displays on the Capitol grounds, the State intentionally created a forum for private speech. Although the Court finds that this is not a case about government speech, if the display of the nativity scene and the exclusion of other holiday displays could be construed as government speech or a state-sponsored message, it would more likely than not amount to a violation of the Establishment Clause under controlling case law. *See Summum*, 129 S. Ct. at 1131(noting that government speech must comport with the Establishment Clause); *see also County of Allegheny v. ACLU*, 492 U.S. 573, 109 S. Ct. 3086 (1989)(holding that display of a privately sponsored creche on the staircase of a courthouse that was not open to all on an equal basis violated the Establishment Clause).

While government speech is not restricted by the free speech clause, government regulation of private speech on public property may not abridge the right of free speech

guaranteed by the First Amendment.  The Supreme Court has articulated a three-step test for determining whether a restriction of private speech on public property violates the First Amendment.  *See Cornelius v. NAACP Legal Def. & Educ. Fund Inc*., 473 U.S. 788, 797, 105 S. Ct. 3429, 3446 (1985).  Applying that test to the present case, the Court must first determine whether the temporary exhibition of the proposed Winter Solstice structure is protected speech.  *Id*.  Second, assuming that the display is protected speech, the Court must conduct a forum analysis as to the public property in question to determine the standard of review.  *Id*.  Third, the Court must determine whether Secretary Daniel's decision to deny ASFT's application comports with the applicable standard.  *Id*.

Regarding the first inquiry, whether viewed as a  religious display or a display expressing a secular viewpoint about the holiday season, exhibition of the proposed Winter Solstice structure is fully protected under the Free Speech Clause.  *See Capitol Square Review and Advisory Bd. v. Pinette,*  515 U.S. 753, 760, 115 S. Ct. 2440, 2446 (1995)(stating that private religious speech in a public forum is fully protected under the Free Speech Clause as secular private expression).

Second, having determined that the State created a designated public forum for private speech, the Court must determine whether the forum is limited or unlimited.  *See Bowman v. White*, 444 F.3d 967, 976 (8th Cir. 2006)("The distinction between a limited designated public forum and an unlimited designated public forum is significant because it controls the level of scrutiny given to restrictions on speech.") A designated limited public forum arises "'where the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or the discussion of certain subjects.'" *Id*. (quoting *Make the Road by Walking, Inc. v.*

*Turner*, 378 F.3d 133, 144 (2nd Cir. 2004)).  If the forum in question is limited, restrictions on speech not within the type of expression allowed must only be reasonable and viewpoint neutral. *See Turner*, 378 F.3d at 143.  If, however, the forum in question is unlimited, the government's ability to restrict speech is sharply circumscribed, and it may enforce a content-neutral time, place, and manner restriction only if the restriction is necessary to serve a significant government interest and is narrowly drawn to achieve that interest.  *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S. Ct. 948, 955 (1983).

Because the Secretary's written policy permitting temporary displays on the Capitol grounds is void of any content-based requirements limiting displays to particular subjects or events, the Court finds that the forum at issue is a designated unlimited public forum.  As such, the State may enforce only content-neutral, narrowly-drawn restrictions that are necessary to serve a significant government interest.  Here, Secretary Daniels testified that he denied ASFT's application based on the appearance of the proposed display and because it "did not fit the holiday scheme of things."

Daniels' unwritten policy that proposed displays fit a holiday theme is content-based, both facially and as applied.  Whether a display is appropriate for exhibit based on its theme or "tone" is a question that cannot be answered without examining the substantive content or message conveyed by the display.  As applied, Daniels's policy results in denying the exhibition of any temporary display other than a nativity scene, which unquestionably burdens the freedom of speech based on the content of speech.

The State argues that the public forum created by the Secretary's written policy creates a limited public forum for holiday displays.  Even accepting this view, Daniels' decision to reject

ASFT's application does not pass muster under the First Amendment. The Winter Solstice display easily fits within the "holiday" category, and Daniels' rejection of ASFT's application based on the general appearance of the proposed display is unreasonable.[2] Like the humble structure on the Capitol grounds containing nativity figures, the proposed Winter Solstice display is simple and made of bare wood.[3]

The Court finds that ASFT has established a substantial likelihood of success on the merits and thus the threat of immediate and irreparable harm. The Court further finds that public policy considerations support the exercise of free speech, and when balanced against the risk that ASFT will be denied its First Amendment right to free speech if a preliminary injunction does not issue, the potential harm to the State is minimal.

Under Rule 65(c) of the Federal Rules of Civil Procedure, a court may issue a preliminary injunction only if the movant gives security in an amount that the court finds proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. In this case, however, the Secretary's written policy governing temporary displays provides that the sponsor is responsible to return the Capitol grounds to substantially the same condition as before the display was placed on the grounds, that the sponsor is responsible for any and all damage caused by the display and is required to repair such damage, and that the sponsor must have insurance to cover damages caused by display. Given these requirements, the Court

---

[2] Counsel for Secretary Daniels did not argue that this policy created a public forum limited to religious expression and, when asked by the Court, said that it should not matter to the Court whether the Freethinkers are a religious group.

[3] As noted from the bench, the rustic nature of the nativity scene is in stark contrast to the holiday decorations displayed inside the Capitol building.

finds that additional security is unnecessary.

For the reasons stated, the Court finds that ASFT's application for a preliminary injunction should be, and it has been, granted. As stated from the bench, Secretary Daniels is enjoined from denying ASFT its First Amendment right to install the proposed Winter Solstice display on the Capitol grounds. Furthermore, Daniels is ordered to permit the Winter Solstice structure to remain on display for the same period of time as granted for the nativity scene currently on display and to permit the Winter Solstice display to be installed in a location that provides the same prominence as provided for the nativity scene display.

IT IS SO ORDERED THIS 16TH DAY OF DECEMBER, 2009.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE